## LOCAL OPTION LAW—BEAL ACT CONSTITUTIONAL—KEEP-ING PLACE AND SELLING DISTINCT OFFENSES.

[Mahoning (7th) Circuit Court, March Term, 1905].

Cook, Burrows and Laubie, JJ.

### ERNEST DOMINICK V. STATE OF OHIO.

1. JURISDICTION OF MAYOR TO HEAR AND DETERMINE MISDEMEANORS.

The mayor of the city of Youngstown has jurisdiction to hear and finally determine misdemeanors notwithstanding the act of April 26, 1904 (97 O. L. 623) where no imprisonment is part of the penalty, and of such character is a charge under Lan. R. L. 7273 (R. S. 4364-20a) for the first offense.

2. SWANKEY AN INTOXICATING LIQUOR UNDER THE STATUTE.

The trial court having determined that a malt liquor is intoxicating, the judgment of such court will not be reversed unless such judgment is manifestly against the weight of the evidence, and in the case of a malt liquor known as swankey it does not so manifestly appear, but on the contrary it clearly appears in this case that such malt liquor is an intoxicating liquor, under the statute.

ERROR to Mahoning common pleas court.

E. N. Brown, for plaintiff in error.

C. A. Manchester, W. R. Graham and B. P. Doty, for defendant in error:

*Scienter.*  *State* v. *Rippeth,* 71 Ohio St. 85; *State* v. *Kelly,* 54 Ohio St. 166 [43 N. E. Rep. 163]; *Altschul* v. *State,* 4 Circ. Dec. 402 (8 R. 214); 11 Enc. Pl. & Pr. 535; *Myer* v. *State,* 6 Circ. Dec. 477 (10 R. 226); *Bissman* v. *State,* 6 Circ. Dec. 712 (9 R. 714); *State* v. *Somerville,* 3 Dec. 422 (1 N. P. 422); *State* v. *Fromer,* 6 Dec. 374 (7 N. P. 172).

The defendant was shown to be the keeper of a place. *Schultz* v. *State,* 32 Ohio St. 276, 281; *Hatch* v. *Kenny,* 141 Mass. 171 [5 N. E. Rep. 527]; 17 Am. & Eng. Enc. Law (2 ed.) 369; Lan. R. L. 10400 (R. S. 6804).

The acquittal before the mayor of Struthers of the charge of selling intoxicating liquors is no bar to a prosecution for keeping a place, although the same sale may be used in evidence in both cases. Clark, Cr. Law 397; *Commonwealth* v. *Hogan,* 97 Mass. 122; *Commonwealth* v. *Cutler,* 91 Mass. (9 Allen) 486; *Commonwealth* v. *Bubser,* 80 Mass. (14 Gray) 83; *Commonwealth* v. *Brelsford,* 161 Mass. 61 [36 N. E. Rep. 677]; *Miller* v. *State,* 3 Ohio St. 475.

Mere arraignment and pleading not guilty before a magistrate is not a jeopardy, although not a jury case. Trial must be actually com-

menced. *Commonwealth* v. *Bressant,* 126 Mass. 246; 14 Cent. Dig. p. 948, Sec. 289; p. 1272, Sec. 670; *State* v. *Hodgkins,* 42 N. H. 474; *Rice* v. *Dewey,* 80 Mass. (14 Gray) 47.

Defendant was not entitled to a jury trial for the reason that imprisonment was no part of the penalty. *Carey* v. *State,* 70 Ohio St. 121, 122 [70 N. E. Rep. 955]; *Inwood* v. *State,* 42 Ohio St. 186; *Fletcher* v. *State,* 7 Circ. Dec. 316 (18 R. 674); *Markle* v. *Akron* (*Town Council*), 14 Ohio 586; *Cincinnati* v. *Steinkamp,* 54 Ohio St. 284 [43 N. E. Rep. 490]; 21 Am. & 'Eng. Enc. Law (1 ed.) 965.

The mayor had jurisdiction to try this case. *State* v. *Anderson,* 44 Ohio St. 247 [6 N. E. Rep. 571].

This question can be collaterally raised. Mechem, Pub. Off. Secs. 326, 327; *Norton* v. *Shelby Co.* 118 U. S. 425 [6 Sup. Ct. Rep. 1121; 30 L. Ed. 178].

## COOK, J.

Ernest Dominick, plaintiff in error, was tried and convicted by the mayor of the city of Youngstown for the offense of keeping a place for the sale of intoxicating liquors in the village of Struthers, this county, such municipality being a local option village under Lan. R. L. 7273, 7274 and 7275 (R. S. 4364-20a, 4364-20b and 4364-20c), known as the Beal law, fined $100 and costs and ordered committed until fine and costs were paid.

The common pleas court affirmed the judgment and sentence of the mayor, and error is now prosecuted in this court to reverse the judgment of both courts.

The evidence shows that the accused had a regularly fitted-up barroom at which he sold a malt liquor known as swankey.

Several grounds of error are assigned and relied upon for the reversal of the judgments below: That the law is unconstitutional for the reason that it gives the magistrate final jurisdiction in the action. As a fine is the only penalty under the section under which the accused was convicted it is unnecessary to consider that question further than to say that it has been so often determined by the courts in this state, and especially in regard to this particular act, that it must be considered as fully settled that the act of the general assembly is not only constitutional but that mayors generally under the act have jurisdiction to finally determine cases arising under the act and fine the accused.

Again, it is claimed that the affidavit under which he was tried should have averred and the state should have proven that the accused knew that the liquor which he had for sale was intoxicating. We think

Dominick v. State.

not. Where one sells liquor as a beverage he is presumed to know whether it is intoxicating or not. If it is, he sells at his peril.

Again, it is claimed the mayor of Youngstown had no jurisdiction for the reason that it has a police court. Without entering upon a discussion of the question whether or not the act creating a police court for the city of Youngstown is unconstitutional for the reason that it is a special act conferring corporate powers upon the municipality of Youngstown, it is sufficient to say that the act did not deprive the mayor of final jurisdiction in this case, first, for the reason that under the act the police court of said city had only jurisdiction for misdemeanors committed within the corporate limits and, were it otherwise, yet it seems to us that under Lan. R. L. 3348 and 3349 (R. S. 1816 and 1817; B. 1536-776 and 1536-777) of the municipal code the mayor would have jurisdiction. These sections provide:

Laning R. L. 3348 (R. S. 1816; B. 1536-776). "In cities, other than those which have a police court, the mayor shall have final jurisdiction to hear and determine any prosecution for the violation of an ordinance of the corporation, unless imprisonment is prescribed as part of the punishment."

Laning R. L. 3349 (R. S. 1817; B. 1536-777). "He shall have final jurisdiction to hear and determine any prosecution for a misdemeanor, unless the accused is, by the constitution, entitled to a trial by jury; and his jurisdiction in such cases shall be coextensive with the county."

That the commission of an offense under the Beal law is a misdemeanor is conceded, but it is said that these two sections were originally embraced in one and the evident intention was to confer exclusive jurisdiction upon police courts in all cases of misdemeanor. We are not impressed with that argument. It would not seem that the intention of the legislature was to deprive mayors of their jurisdiction to hear and determine misdemeanors when imprisonment is not part of the penalty.

In Lan. R. L. 3348 (R. S. 1816; B. 1536-776) the mayor is specially deprived of jurisdiction under an ordinance in cases therein prescribed and by Lan. R. L. 3349 (R. S. 1817; B. 1536-777) he is given jurisdiction in misdemeanors where the party is not entitled to trial by jury under the constitution.

The cases are entirely dissimilar and the history of the legislation upon this subject sustains this view. We therefore would not be inclined to hold, even independent of the restricted powers of the police court for the city of Youngstown, that the mayor had not such jurisdiction; but however that may be, we have no doubt that, under the act

(97 O. L. 623), creating a police court for the city of Youngstown, the mayor had such jurisdiction.

It will be observed that this act is classified as a local law and possibly should be construed as such. It does not provide for a police court but a criminal court, a court new to our general legislation. The first section, as we have said, distinctly restricts its jurisdiction in misdemeanors to the limits of the city, and as we think could not by any process of reasoning be construed as intending to deprive the mayor of his jurisdiction in misdemeanors outside of the city limits, even if Lan. R. L. 3349 (R. S. 1817; B. 1536-777) should be construed as defendant claims it should be.

It is again insisted that the accused had been acquitted by the mayor of Struthers for the same offense. That question need not be considered as the bill of exceptions does not purport to set out all the evidence, but, waiving that, the claim is not tenable. Keeping a place for the sale of intoxicating liquors and the sale of the same are distinct offenses under the section. Whoever shall keep a place for the sale of intoxicating liquors; and whoever sells intoxicating liquors shall be guilty of a violation of the statute. *Miller* v. *State,* 3 Ohio St. 475; and other authorities cited by counsel for the state. Moreover in this case the sales relied upon by the state for the purpose of showing that the accused was guilty of "keeping a place" were entirely different and distinct from the sale which he was charged with making before the mayor of Struthers. Lastly it is said that the liquor which Dominick sold was not intoxicating. Like the last assignment this question is not before us for the reason that the bill of exceptions does not purport to contain all the evidence; but we have read the evidence and we think that the finding and judgment of the trial court is not only not against the weight of the evidence but is clearly supported by the evidence. True there was the evidence of the expert chemist sent by the brewer at Chicago who manufactures swankey which would tend to show that it does not contain sufficient alcohol to intoxicate without very large quantities were used. To offset this was the chemist's for the state who testified that it contained a considerable quantity of alcohol.

Which of these hired experts was more worthy of belief, if they should be believed at all, was peculiarly a question for the trial court. Then there were witnesses—true they were detectives employed by the anti-saloon league—who testified that one or two glasses would make you sensible of its effects and that four or five glasses would make you quite drunk, showing that it was equally as strong as lager beer for intoxicating purposes, either from alcohol or a much worse ingredient.

Further we should take into consideration that Dominick had a

Dominick v. State.

room for the almost exclusive sale of swankey. Why did he have such place in a local option village? What would the people want with swankey if it did not intoxicate and how would it pay to keep a room for its sale if it would produce no different effect from soda water or other soft drinks? These so-called malt drinks are not sold as a beverage for their taste but for their effect and they are used for that purpose.

When the citizens have decided they do not want any intoxicating liquors sold in a certain district, there is no excuse for attempting to violate the law by artifice of this character—better by far to have open saloons for the sale of ordinary liquors.

We see no error in the record and the judgment is affirmed.

**Burrows** and **Laubie, JJ.,** concur.